ROBERT F. COLLINS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Collins v. Commissioner
Docket No. 4128-75
United States Tax Court
T.C. Memo 1977-26; 1977 Tax Ct. Memo LEXIS 414; 36 T.C.M. (CCH) 125; T.C.M. (RIA) 770026; February 1, 1977, Filed *414 Held, Petitioner has failed to demonstrate that the debt in question became worthless during the year in issue. Held further, Petitioner has failed to show that he sustained a loss during the year in issue as evidenced by a closed transaction in connection with a transaction entered into for profit. Jack E. Bratter, for the petitioner. Marion Malone, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the calendar year 1969 in the amount of $15,479. The issue for our decision is whether, assuming proof of worthlessness, the payment by petitioner of a certain debt entitles him to an ordinary deduction under section 166(a), as amplified in subsection (f), or whether said payment must be treated as a short-term capital loss under subsection (d) thereof. If not, we must decide whether petitioner is entitled to a loss deduction under section 165(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioner, Robert F. Collins, resided *415 in North Hollywood, California at the time he filed his petition herein. Petitioner filed his Federal income tax return for the calendar year 1969 with the internal revenue service center, Ogden, Utah. On that return petitioner claimed a deduction for a capital loss in the amount of $50,000 for an alleged bad debt owed petitioner by Emmett T. Steele (hereinafter Steele). Petitioner maintained his books and records on a cash method of accounting. OnOctober 21, 1959, Steele filed a lawsuit in the Superior Court for the State of California against Litton Industries, Inc., three named individuals, and a partnership. The complaint was for fraud and deceit and breach of contract for failure of defendants to deliver to Steele certain shares of the "Founders Stock" of Litton Industries, Inc. Hereinafter this lawsuit will be referred to as the Litton case. On September 29, 1959 Steele retained Arthur J. Crowley of the law firm of Crowley & Rhoden to represent him in the Litton case. In consideration for his services Crowley was to receive $5,000, plus a contingent fee. On November 14, 1962, Harold Rhoden was substituted as attorney for Steele in the Litton case. In connection with the *416 substitution Rhoden, Crowley and Steele entered into an agreement pursuant to which Rhoden and Crowley were to receive 40 and 60 percent, respectively, of the aforenoted contingent fee if the Litton case were settled prior to trial or 50 percent each of such fee if settled after the commencement of trial. The trial commenced on October 7, 1964 and ended on April 19, 1965 when a jury returned a verdict in favor of Steele against all defendants and awarded compensatory damages in the amount of $5,182,855 plus 7 percent interest thereon. On April 19, 1965, a total judgment of $7,975,015.88 was entered against the defendants. On August 25, 1965 thetrial judge granted the motion of Litton Industries, Inc. for judgment notwithstanding the verdict, and denied a similar motion on behalf of the other defendants. The trial judge also granted the other defendants' motion for a new trial. An appeal was taken. On appeal the decision of the trial judge with respect to these motions was affirmed. The Appeals Court decision became final on June 5, 1968. In November, 1966 petitioner and Steele became acquainted through a mutual friend, Dr. John A. Morgan, who referred Steele to petitioner for *417 the purpose of Steele's obtaining a loan. Petitioner advanced $5,000 to Steele on November 25, 1966, which Steele used for living expenses and the payment of debts. Upon receipt of petitioner's check Steele signed a note dated November 23, 1966 which reads as follows: I Emmett Steele owe Dr. R. Collins $5,000.00 plus 7 percent interest and will pay $10,000 when my Litton case is settled. On December 29, 1966 Rhoden informed Steele, by letter, that unless he received approximately $45,000 he would cease to represent Steele in the Litton case. [1] In January, 1967 Steele again attempted to borrow funds from petitioner, who at that time was without the financial resources to render financial assistance. However, petitioner possessed a note and trust deed and was informed that Steele would be able to secure needed funds from a bank if petitioner would employ the note and trust deed to secure the loan. The discussions with Steele resulted in the execution on January 11, 1967 of the following instrument: AGREEMENT This is an agreement between EMMETT STEELE and ROBERT F. COLLINS *418 whereby Collins agrees to sign and secure a loan of Forty-Five Thousand ($45,000.00) Dollars to enable Steele to borrow $45,000.00 from Valley National Bank. Steele agrees to pay his attorney at least $40,000.00 of this money as a loan against legal obligations and Steele agrees to secure a letter from Harold Rhoden, his attorney, stating that the amount Rhoden has now received will be sufficient loan whereby Rhoden can complete the Steele vs. Litton case without request for further funds. Steele agrees to give Collins security to the limit of his equities in three pieces of property: 1. Seattle apartments. 2. Medford, Oregon house. 3. Palm Springs lot. Steele agrees to sell these properties as quickly as possible and give Collins the money. The total amount of money Collins receives in the end will be an offset to the $50,000 that Steele will owe Collins. This is an interim agreement and Steele agrees to sign further papers as discussed. Steele was given $5,000.00 in cash and $45,000.00 of the Valley National Bank loan proceeds totals $50,000.00. Steele agrees to give Collins eight (8) percent of his sixty (60) percent gross proceeds from Steele vs. Litton case. Steele *419 agrees to pay interest on the $45,000.00 loan. This agreement has been made in order that the $45,000.00 may be obtained forthwith. Signed Emmett Steele
Signed Robert F. Collins
Also on January 11, 1967 petitioner executed a general continuing guarantee and an assignment of the note and trust deed to the Valley National Bank for the purpose of guaranteeing a loan of $45,000 from Valley National Bank to Steele. [2] The loan from the Valley National Bank was on a 90-day note and, as the note matured, the interest was paid and a new note issued. Beginning on February 26, 1968 petitioner made the interest payments as follows: Date
Amount
2/26/68
$ 842.81
4/8/68
910.00
7/18/68
910.00
10/7/68
900.00
12/28/68
910.00
4/4/69
900.00
8/1/69
1,285.63
In *420 July 1969, when the 90-day note matured Valley National Bank refused to renew the loan because petitioner's deed of trust securing the loan had matured and was in default. The Bank called upon petitioner to pay the principal according to the terms of his guarantee. Petitioner did so in August, 1969. As of December 31, 1969 Steele had not commenced a new trial of the Litton case. Such failure was due in part to his dearth of financial resouces. On June 25, 1971 Steele and Marvin Mitchelson entered into an agreement pursuant to which Mitchelson was to advance the funds needed to proceed to trial in return for a contingent interest in the Litton case. Steele died on September 3, 1971. The Litton case was settled by his estate in January, 1972 for $2,400,000 which amount was paid to his estate. An Inventory Appraisement was filed on March 28, 1973 in connection with the probate of Emmett Steele's estate. The following assets were listed at the values indicated: 1. Residence of Emmett Steele
$ 100,000
2. Other real estate
2,500
3. 1,000 shares of an unlisted stock
4,600
4. 800 shares of an unlisted stock
2,000
5. A 9-1/2 % interest in patents
2,375
6. Settlement in the Litton case
2,400,000
$ 2,511,475
*421 Approximately 49 claims have been filed against the estate, eight of which had their genesis in the Litton case. These eight, exclusive of interest, are summarized below. Claimant
Source of Claim
Amount
Crowley
Attorney's fees
20% of the recovery
Rhoden
Attorney's fees
20% of the recovery plus any
portion of Crowley's claim
that is ultimately disallowed.
Robert W. Hollman
Attorney's fees
13.33% of the recovery
Ray C. Wilcox
Loan
.6% of the recovery
Alex Roger
Loan
1.8% of the recovery
Marvin M. Mtchelson
Loan and Attorney's
10% of the gross recovery,
fees
minimum $575,000.
Cornel Wilde
Loan
$3,068 plus 1.2% of the gross
recovery or $100,000 which-
ever is greater.
Petitioner
1966 Loan
$50,000 plus 4.8% of the
1968 & 1969
recovery, plus the interest
interest payments
payments on the notes.
on the 90-day note
payment on his
guarantee Also filed against the estate were various claims not relating to the Litton case in the amount of $442,525.72 plus interest. $295,063.28 of this amount was claimed to have been incurred on or before December 31, 1969. Petitioner's claims were rejected by the estate of Steele and petitioner filed suit thereon. At the time of the trial in the instant case there had yet to be a disposition *422 of that lawsuit which petitioner fully intended to pursue. OPINION Petitioner's primary contention is that the claimed loss is deductible under section 166(a) [3] *423 , I.R.C. 1954, since the payments he made pursuant to the continuing guarantee fall within the ambit of section 166(f). [4]Section 166(f) provides, in part, that a payment by an individual taxpayer in discharge of his obligation as a guarantor shall be treated as a debt becoming worthless in the year of payment provided that the proceeds of the loan so guaranteed were used in the trade or business of the borrower and the obligation of the borrower to the person to whom the payment was made was worthless at the time of payment. The parties agree that petitioner, an individual, made the payment [5] to Valley National Bank in discharge of his obligation as guarantor. They disagree as to whether the last two conditions set forth above have been satisfied. *424 Petitioner argues first that the proceeds of the loan were used in Steele's trade or business, namely the litigation of the Litton case. It is petitioner's position that Steele was engaged on a fulltime basis in financing and prosecuting that case and therefore such activities constitute the carrying on of a trade or business. Second, petitioner argues that the facts demonstrate that the debt owed Valley National Bank by Steele was worthless in 1969. In this connection he asserts that in 1969 Steele had few assets, lacked the funds to prosecute the Litton case, and had liabilities in excess of assets. Hence petitioner concludes that having satisfied the conditions of 166(f) he is entitled to deduct the claimed loss under section 166(a). Respondent contends that petitioner is not entitled to a bad debt deduction. He urges that petitioner has failed to establish the existence of a bona fide debt, [6] *425 that Steele's activities in connection with the Litton case do not constitute a trade or business, and that petitioner has not shown that Steele's debt became worthless in 1969. We agree that petitioner has not demonstrated that Steele's debt was worthless in 1969. The question of when a debt becomes worthless is one of fact the answer to which must be gleaned from all the facts and circumstances. The burden of proof is on petitioner to demonstrate that the debt at issue had some value at the end of 1968 and became worthless by the end of 1969. Herbert W. Dustin,53 T.C. 491 (1969), affd. 467 F. 2d 47 (9th Cir. 1972). In this context worthlessness means that the debt lacked both potential and current liquid value. Normally such burden is met by pointing to some identifiable event that shows the absence of potential value. W.A. Dallmeyer,14 T.C. 1282 (1950). Although the demonstration of an identifiable event is not an absolute prerequisite, a taxpayer must proffer objective evidence of worthlessness and his unsupported *426 opinion will not suffice to sustain his burden of proof. Orrin W. Fox,50 T.C. 813 (1968), affd. 25 AFTR 2d 70-891 (9th Cir. 1970). After careful consideration of the evidence we conclude that petitioner has failed to sustain his burden. Stripped to the bare essentials petitioner's case rests on his contentions that Steele was broke and unable to prosecute further the Litton case in 1969 and that, upon Steele's death, his estate had insufficient assets from which petitioner could recoup his outlay. However, the record simply does not support these contentions. First, we are unable to find as a fact that Steele's estate was unable to meet the claims of its creditors. The evidence indicates the estate had assets valued at $2,511,475 against which claims in approximately the same amount (excluding interest thereon) have been filed. We agree with petitioner that should every claim be valid the estate will not be able to pay each and every claim including interest. However, at the time of trial in the instant case claims in the amount of approximately $1,672,123.50, including those of petitioner, had either been rejected or received no response from the estate. We will not conjecture *427 on the ultimate disposition of these claims. However, to our mind it is manifest that there still remains a very real possibility that petitioner will prevail in his lawsuit against Steele's estate. Further, even had petitioner shown the estate to be insolvent he would not be entitled to prevail on this basis. Proof of insolvency, that a debtor's liabilities exceed his assets, shows only that the debtor's accounts are uncollectible in part. It does not establish a debt's worthlessness. Cimarron Trust Estate,59 T.C. 195 (1972). Furthermore, petitioner's argument is not soundly based on the record presented in this case. Implicit in the contention is the assumption that Steele's financial condition remained unchanged from 1969 until his death. However, it was incumbent upon petitioner to establish this fact and this he has failed to do. The evidence in this regard comprised the testimony of several persons who were in various ways acquainted to some degree with the affairs of Steele. All expressed the opinion that Steele was in financial straits and hard-pressed for funds with which to pursue the Litton case in 1969. Such opinions were not supported by objective evidence in *428 the record and to our mind rested largely on conjecture rather than firsthand knowledge. Nowhere in the record does there appear objective evidence of Steele's financial condition in 1969 or of the assets and liabilities owned and incurred by Steele in that year. Moreover we believe that Steele's debt to Valley National Bank had potential value in 1969. The standards for such a determination are set forth in Sterling Morton,38 B.T.A. 1270, affd. 112 F. 2d 320 (7th Cir. 1940) wherein the Board stated at 1278, 1279: From an examination of these cases it is apparent that a loss by reason of the worthlessness of stock must be deducted in the year in which the stock becomes worthless and the loss is sustained, that stock may not be considered as worthless even when having no liquidating value if there is a reasonable hope and expectation that it will become valuable at some future time, and that such hope and expectation may be foreclosed by the happening of certain events such as the bankruptcy, cessation from doing business, or liquidation of the corporation, or the appointment of a receiver for it. Such events are called "identifiable" in that they are likely to be immediately *429 known by everyone having an interest by way of stockholdings or otherwise in the affairs of the corporation; but, regardless of the adjective used to describe them, they are important for tax purposes because they limit or destroy the potential value of stock. The ultimate value of stock, and conversely its worthlessness, will depend not only on its current liquidating value, but also on what value it may acquire in the future through the foreseeable operations of the corporation. Both factors of value must be wiped out before we can definitely fix the loss. If the assets of the corporation exceed its liabilities, the stock has a liquidating value. If its assets are less than its liabilities but there is a reasonable hope and expectation that the assets will exceed the liabilities of the corporation in the future, its stock, while having no liquidating value, has a potential value and cannot be said to be worthless. The loss of potential value, if it exists, can be established ordinarily with satisfaction only by some "identifiable event" in the corporation's life which puts an end to such hope and expectation. In 1969 Steele had more than a reasonable prospect of prevailing in *430 the Litton case. Although the case had to be commenced anew, Steele had previously received a judgment in the amount of $7,975,015.88. His perseverance and the ultimate settlement of the Litton case amply demonstrate the bona fides of his lawsuit on the merits. Apparently, in 1969, all that was lacking were funds to prosecute which amounts were located in 1971. Presented with this scenario it cannot be gainsaid that Steele's debt had potential value in 1969. Finally, as noted above, it is incumbent on petitioner to show that the debt had value at the end of 1968 and was worthless by the close of 1969. Petitioner has put forth no evidence sufficient to satisfy us that Steele's finances changed between December 31, 1968 and December 31, 1969. For these reasons we conclude that sections 166(a) and (f) are inapplicable to the instant case. [7]
Petitioner's second *431 and alternative argument is that he is entitled to a bad debt deduction under section 166(d). A deduction is allowanbe under that section only if the debt becomes wholly worthless during the taxable year. Section 1.166-5(a)(2), Income Tax Regs.[8] *432 For the same reasons, we find petitioner has not established that the debt owed him by Steele (after payment pursuant to the grananty) was worthless in 1969. Petitioner's alternative position is that he entered the transaction at issue for profit and is entitled to a loss deduction under section 165(a). [9] Assuming arguendo that the payments were pursuant to a transaction entered into for profit rather than a debt, petitioner has failed to show that the loss was sustained in 1969. A precondition to a loss deduction under section 165 is that the loss be evidenced by a closed or completed transaction. Ramsay Scarlett & Co.,61 T.C. 795 (1974), affd. 521 F. 2d 786 (4th Cir. 1975). If, in the year in which the deduction is sought there exists a reasonable possibility that the alleged loss can be recouped by actions against responsible parties or otherwise, the transaction *433 will be deemed open. Scofield's Estate v. Commissioner,266 F. 2d 154 (6th Cir. 1959). Parmelee Transportation v. United States,351 F. 2d 619 (Ct. Cl. 1965). We think it abundantly clear that not only was the transaction open in 1969 but that it had yet to close at the time of trial in the instant case. Accepting petitioner's characterization of the transaction as one entered into for profit, it is obvious that any recovery to be had rested on the fortunes of Steele in the Litton case. It is undisputed that Steele during 1969 was giving his utmost effort to prevail in that suit. Moreover, as noted above, the 1965 verdict in favor of Steele indicates that his suit was far from frivolous. His then attorney, Rhoden, was of the opinion that Steele would again prevail at the subsequent trial. Although not determinative, such opinion is evidence of the reasonableness of a taxpayer's expectation of recovery. Scofield's Estate, supra.
Of course, petitioner's ability to recover also hinged upon the willingness of Steele (or his estate) to pay his just debts after securing payment of the judgment in the Litton case. The record is devoid of any evidence that Steele had no intention of *434 repaying advances from petitioner or others. Even if he had refused, as has his estate, his creditors could have, as has petitioner, instituted a lawsuit against the estate. The fact of the matter is that petitioner has in good faith filed a lawsuit against the estate which he intends to pursue with full vigor. Absent a disposition of that case it is our opinion that the transaction between Steele and petitioner remains open and the deduction claimed by petitioner is hereby denied. Decision will be entered for the Respondent. Footnotes
1. At that time Steele had already incurred debts of approximately $75,000 in connection with the Litton case.↩
2. In connection with this loan Steele tendered to the bank a financial statement showing among other things the following: ASSETS
LIABILITIES
Bank Accounts
$ 5,750
Notes
$48,000
Real Estate:
Mortgages
41,700
Home
75,000
Home
45,000
Lot
5,500
28 percent ownership of
Fox Hollow Turf Express
125,000
$256,250
$89,700 Annual salary and consulting fees $25,000. Absent this, or some other guarantee Valley National Bank did not consider Steele's resources sufficient to warrant the loan.↩
3. SEC. 166. BAD DEBTS. (a) General Rule. -- (1) Wholly Worthless Debts.--There shall be allowed as a deduction any debt which becomes worthless within the taxable year. (2) Partially Worthless Debts.--When satisfied that a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. 4. SEC. 166(f)↩. Guarantor of Certain Noncorporate Obligations.--A payment by the taxpayer (other than a corporation) in discharge of part or all of his obligation as a guarantor, endorser, or indemnitor of a noncorporate obligation the proceeds of which were used in the trade or business of the borrower shall be treated as a debt becoming worthless within such taxable year for purposes of this section (except that subsection (d) shall not apply), but only if the obligation of the borrower to the person to whom such payment was made was worthless (without regard to such guaranty, endorsement, or indemnity) at the time of such payment. 5. The parties agree that the agreement between Steele and petitioner resulted in a novation of the $5,000 loan and that this loan should be treated as part of the payment and debt emanating from petitioner's guarantee. We will therefore so treat the $5,000 loan. In any event, our disposition of the issues renders it unnecessary to determine whether a novation occurred or there remained in existence two separate and distinct debts.↩
6. Petitioner has advanced alternative characterizations of the facts presented. He urges, on one hand, that a debtor-creditor relationship existed for purposes of sec. 166↩ and contends that he entered into the agreement for profit for purposes of sec. 165. In view of our conclusions with respect to these arguments we need not decide whether the agreement resulted in a debtor-creditor relationship or whether petitioner purchased an interest in a lawsuit.
7. Although the foregoing serves to dispose of petitioner's first argument, we also note that the evidence put forth on petitioner's behalf was insufficient to sustain his burden of proving that Steele was either in the trade or business of litigating or that the Steele suite arose from the carrying on of a trade or business.↩
8. Sec. 1.166-5. Nonbusiness Debts. (a) Allowance of Deduction as Capital Loss. (1) The loss resulting from any nonbusiness debt's becoming partially or wholly worthless within the taxable year shall not be allowed as a deduction under either section 166(a) or section 166(c) in determining the taxable income of a taxpayer other than a corporation. See section 166(d)(1)(A). (2) If, in the case of a taxpayer other than a corporation, a nonbusiness debt becomes wholly worthless within the taxable year, the loss resulting therefrom shall be treated as a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months.Such a loss is subject to the limitations provided in section 1211, relating to the limitation on capital losses, and section 1212, relating to the capital loss carryover, and in the regulations under those sections. A loss on a nonbusiness debt shall be treated as sustained only if and when the debt has become totally worthless, and no deduction shall be allowed for a nonbusiness debt which is recoverable in part during the taxable year.
9. SEC.165. losses. (a) General Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.↩