**RAINBOW INN, INC., Edmund Jezemski, Sec.-Treas., Clayton, New Jersey, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 18474.

United States Court of Appeals, Third Circuit.

Submitted on Briefs Sept. 17, 1970.

Decided Oct. 26, 1970.

---

Robert M. Taylor, Philadelphia, Pa., for appellant.

Richard Farber, Meyer Rothwacks, Lee A. Jackson, Johnnie M. Walters, Tax Division, Dept. of Justice, Washington, D. C., for appellee.

Before BIGGS, SEITZ and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Appellant taxpayer seeks review, pursuant to 26 U.S.C. § 7482, of the decision of the Tax Court which disallowed a claimed embezzlement loss deduction for the taxable year ending June 30, 1962 on the ground that taxpayer had a reasonable prospect of recovery until 1964. At issue is the year of deductibility of an embezzlement loss of $33,013.37. If the taxpayer is entitled to the claimed deduction in 1962, net operating loss carrybacks to the years ending June 30, 1959, June 30, 1960, and June 30, 1961 will result.

Taxpayer, a New Jersey corporation, was in the years in question engaged in the retail food and liquor business in Clayton, New Jersey. Its 40 shares of $1,000 par value common stock were owned 50 per cent by Jean Wlodkowski, 25 per cent by Edmund Jezemski, and 25 per cent by Apolonia Jezemski. Apolonia Jezemski is the wife of Edmund Jezemski, but in 1962 they were estranged and had been living apart since 1959. Jean Wlodkowski was the president of taxpayer, and Edmund and Apolonia Jezemski its vice-president and secretary-treasurer respectively.

Apolonia Jezemski kept all of taxpayer's books, attended to its banking details, received the bank statements, and reconciled those statements with taxpayer's books. In November, 1961 Apolonia requested her husband and Jean Wlodkowski to distribute to her what she considered to be her share of petitioner's bank deposits. When they refused, she told them she would get her money. Nevertheless they continued the arrangement whereby she was in charge of taxpayer's books and received its bank statements.

During the taxable years in issue taxpayer maintained a checking account at the Clayton National Bank, Clayton, New Jersey. Checks drawn on this account required the signatures of all three of taxpayer's officers. No running balance was maintained in the taxpayer's checkbook. Hence the monthly bank statements were the only indications available to the corporate officers of its bank balance. These statements showed balances as follows:

| Balance | Date |
|---|---|
| $46,675.07 | January 30, 1962 |
| 47,331.71 | February 26, 1962 |
| 49,733.95 | March 23, 1962 |
| 42,403.86 | April 30, 1962 |
| 17,417.21 | May 14, 1962 |

Between February 2, 1962 and May 7, 1962, twelve checks totaling $36,513.37 were drawn on the account, on which Apolonia forged the signatures of the other two officers. Of this sum, $3,500 was redeposited on March 7, 1962. Thus the total loss was $33,013.37. Jean Wlodkowski and Edmund Jezemski never looked at either the February 26, 1962 statement, on which one forged item of $3,500 appeared, or the April 30, 1962 statement, on which three forged items appeared. They did see the March 23, 1962 statement, and failed to observe that the March 7, 1962 deposit of $3,500 (equal in amount to the $3,500 February forgery) had been erased from the statement after it left the bank. They did not check individual items. The May 14, 1962 statement came to Edmund Jezemski's attention and for the first time he noticed a large discrepancy be-

tween opening and closing balances and examined the checks. On May 17, 1962 he notified the bank of the forgeries.

Although the Commissioner contended in his notice of deficiency that the withdrawals were distributions of profits and capital to a stockholder-officer, he now concedes that Apolonia's withdrawals by forged checks are thefts within the meaning of 26 U.S.C. § 165(e). The Tax Court found, and it is not disputed, that none of the embezzlements were ever reimbursed from any source and that in 1962 there was no reasonable prospect of recovery from Apolonia. There is no question but that the loss was discovered in 1962. See 26 U.S.C. § 165(e).

Despite their failure to take even the most elementary precaution of examining bank statements and checks when they had prior notice of Apolonia's hostility, Jean and Edmund in August, 1962 caused the taxpayer to file a civil suit in the Gloucester County Court against the bank on the ground that it should not have honored the forgeries. The Gloucester County Court entered judgment on August 2, 1963 for taxpayer in the amount of $33,013.37, but the Superior Court of New Jersey, Appellate Division, reversed. Rainbow Inn, Inc. v. Clayton Nat'l Bank, 86 N.J.Super. 13, 205 A.2d 753 (App.Div.1964). The Tax Court found:

"ULTIMATE FINDING OF FACT

"Until the New Jersey Superior Court, Appellate Division, on December 18, 1964, reversed the judgment of the lower court in favor of petitioner in the suit by petitioner against the Clayton National Bank, there existed a reasonable chance of recovery by petitioner of the amounts paid out on the checks forged on its account."

Having so found, the Tax Court applied Treas.Reg. § 1.165–1(d) (3), 26 C.F.R. § 1.165–1(d) (3) which provides:

"Any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer dis-

covers the loss (see § 1.165–8, relating to theft losses). *However, if in the year of discovery there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until the taxable year in which it can be ascertained with reasonable certainty whether or not such reimbursement will be received."* (emphasis added)

Relying on taxpayer's short-lived victory in the Gloucester County Court, the Tax Court held that the loss was not deductible until 1964. Taxpayer challenges this holding on two grounds.

■ First, it contends that the italicized portion of § 1.165–1(d) (3) is invalid because of the express language of 26 U.S.C. § 165(e):

"For purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss."

It contends that our decision in Asphalt Industries, Inc. v. Commissioner of Internal Revenue, 411 F.2d 13 (3d Cir. 1969) controls, and that *Asphalt Industries* holds theft losses to be deductible *only* in the year of discovery. Language in that opinion, taken out of context, might be so construed. But that case dealt with the attempt by a taxpayer to deduct a theft loss in a year prior to its discovery, and held that such a deduction was precluded by the 1954 enactment of § 165(e) quoted above. The case did not deal with the problem whether a loss had yet been sustained, for purposes of § 165, while there existed a reasonable prospect of recovery. Section 165(e) refers to the year of discovery of the loss, not of the theft. Section 1.165–1(d) (3) is not, therefore, inconsistent with the statute. Acceptance of taxpayer's position would produce the anomalous result that a theft discovered in one year could be deducted as a loss in that year even though fully insured,

and reimbursed in a subsequent year. The rule that the existence of a reasonable prospect of recovery postpones the occurrence of a loss has had general application to § 165 and its predecessor Code sections, and the enactment in 1954 of the Code provision making theft losses deductible in the year of discovery of the loss was not intended to change that rule. Thus we reject taxpayer's contention that § 1.165–1(d) (3) of the Regulations is invalid.

▓▓▓▓ Taxpayer's second basis for challenging the Tax Court's decision is that the finding of a reasonable prospect of recovery as of 1962 is clearly erroneous. Here it is on sounder ground.

A New Jersey statute in force in 1962 [1] provided:

"A. No banking institution shall be liable to a depositor for an amount charged to * * * him because of the payment by the banking institution of a check * * * upon which the signature of the depositor was forged * * * unless, within two years after the return of such instrument to the depositor, he shall notify the banking institution in writing that his signature was forged * * *.

> \* \* \* \* \* \*

"C. No banking institution shall be liable to a depositor for an amount charged * * * upon which the signature of any party was forged * * * if the banking institution shall establish

(1) that the depositor failed to exercise due diligence in discovering, and giving notice to the banking institution that an amount was charged to * * * him because of the payment by the banking institution of any such check * * *; and

(2) that such lack of due diligence contributed to the payment by the banking institution of an amount so charged to * * * the depositor for the recovery of which the depositor seeks to hold the banking institution liable." N.J.S.A. 17:9A–226 (A), (C).

It was perfectly clear in 1962 that the remaining officers of taxpayer had acted without due diligence in discovering Apolonia's forgeries, and that such lack of due diligence contributed to the payment by the bank of the eleven checks which made up the $33,013.37 loss. But the Gloucester County Court, in a feat of statutory construction that can only be described as aberrant, held that notice to the bank within two years, as required by N.J.S.A. 17:9A–226(A) satisfied the "due diligence" requirement of subsection (C), and that the two subsections were interdependent rather than independent limitations on the bank's liability. No other New Jersey case had ever hinted at such a construction, which defies the plain language of the statute. The Appellate Division emphatically reversed. Rainbow Inn, Inc. v. Clayton Nat'l Bank, *supra*.

With respect to the New Jersey litigation the Tax Court says:

> "In spite of the fact that petitioner ultimately lost its case against the bank, in light of the trial court's decision below, and the unsettled nature of the statutory relationships between the two sections of the statute, we conclude that there existed at the time petitioner discovered the forgery and at the time petitioner instituted its suit against the bank a reasonable prospect of recovery by petitioner from the bank."

We disagree. With all due deference to the County Court of Gloucester County, the relationship between subsections (A) and (C) of the statute was not unsettled until its wholly incomprehensible statutory construction. There never was any real doubt that lack of due

---

1. Since repealed by the enactment of the Uniform Commercial Code, N.J.S.A. 12A:1–101 et seq., effective January 1, 1963.

diligence in discovering the ongoing forgeries would provide the bank a defense under N.J.S.A. 17:9A–226(C). Any "reasonable prospect of recovery" would have to be found in the slight chance that attorneys for the bank might neglect to avail themselves of the tools of discovery provided by the New Jersey rules of civil procedure to determine the facts.

That kind of possibility is not what the regulations contemplate. Apropos here is the language of Parmelee Transportation Co. v. United States, 351 F.2d 619, 628, 173 Ct.Cl. 139 (1965):

"There are many reasons for initiating lawsuits. * * * Where the stakes are so high, a suit may be '100% justified' even though the probability of recovery is miniscule. In short, although we offer no litmus paper test of 'reasonable prospect of recovery,' we note that the inquiry should be directed to the probability of recovery as opposed to the mere possibility. Analyzing the rule in percentage terms, we would consider a 40 to 50 percent or better chance of recovery as being 'reasonable'. A lawsuit might well be justified by a 10 percent chance."

In our view the undisputed and easily discoverable facts relating to lack of diligence and the New Jersey statute put the taxpayer's chances against the bank as of 1962 in the realm of remote possibility rather than reasonable prospect of recovery. Moreover, the Tax Court's reliance on the decision of the Gloucester County Court as evidence of a reasonable prospect of recovery in 1962 is misplaced. The test is whether there was a reasonable prospect of recovery at the time the deduction was claimed, not later. No reasonable taxpayer could have anticipated that decision. On the entire evidence we are left with the definite and firm conviction that a mistake has been committed. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). The decision of the Tax Court will be reversed.