RAMSAY SCARLETT AND COMPA-
NY, INC., Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellee.

BALTIMORE STEVEDORING
COMPANY, INC., Appellant.

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellee.

Nos. 74–2000, 74–2001.

United States Court of Appeals,
Fourth Circuit.

Argued April 10, 1975.

Decided Aug. 5, 1975.

Theodore W. Hirsh, Baltimore, Md. (Jacques T. Schlenger, Harry D. Shapiro and Venable, Baetjer & Howard, Baltimore, Md., on brief), for appellants.

William A. Whitledge, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews and Meade Whitaker, Attys., Tax Div., Dept. of Justice, on brief), for appellee.

Before WINTER and WIDENER, Circuit Judges, and THOMSEN, Senior District Judge.

THOMSEN, Senior District Judge.

Taxpayers, Ramsay Scarlett and Company, Inc. (Ramsay) and Baltimore Stevedoring Company, Inc. (Stevedoring), appeal from a decision of the Tax Court denying the deduction in their respective corporate income tax returns for the calendar year 1965, of claimed theft losses resulting from embezzlements discovered during that year. The findings of fact contained in the opinion of the Tax Court, 61 T.C. 795, at 796–806, fully and fairly state the essential

facts, and they may be briefly summarized here.

In September 1965 Ramsay and Stevedoring, which are owned and run by the same persons, discovered that their bookkeeper had embezzled approximately $1.5 million of corporate funds, mostly by the use of corporate checks.[1] Insurance provided only $50,000 of recovery for petitioners in 1965. Taxpayers' corporate counsel (Penniman) was unable to represent them in a claim against the bank at which most of the checks had been cashed (Equitable), because it was also a client of his firm; so, before the end of the year 1965 taxpayers engaged Melvin J. Sykes, Esq., an able and experienced lawyer, to advise them and to represent them in any claims against Equitable, another bank (Mercantile) and taxpayers' auditors.

A partner[2] of taxpayers' corporate counsel told taxpayers' officers in late 1965 or early 1966 that he thought taxpayers' chances of recovery against the banks were poor. Sykes, however, was properly unwilling to give an opinion as to taxpayers' chances of recovery against the banks until he had heard the testimony at the criminal trial of the embezzler and had had an opportunity to study the complicated legal questions in the light thereof. Taxpayers notified Equitable that such an investigation was proceeding.

In the spring of 1966, taxpayers' directors decided to sue Equitable, but because of the close relationship between their respective boards of directors, copies of the proposed declaration[3] were delivered to the bank and by the bank to its insurance company. Both before and

after the suit was actually filed in April 1967, Sykes discussed a possible settlement with William L. Marbury, representing Equitable, and B. Conway Taylor, representing the insurer. Interrogatories were filed, depositions were taken, and final pretrial memoranda were filed. Shortly thereafter, in December 1969, the case was settled by Equitable paying taxpayers $475,000.

At or about the same time Mercantile settled Stevedoring's $12,000 claim against it for $9,000 and the auditors settled taxpayers' claims against them for $25,000.

On their 1965 returns, taxpayers had claimed theft losses for the full amounts of the embezzlements discovered in 1965, less the insurance proceeds ($50,000) received during that year. The Commissioner disallowed the claims. The Tax Court, in an opinion which contained a full discussion of the facts and the applicable law, held: (1) that sec. 1.165–1(d)(3), Income Tax Regs.,[4] is a reasonable and valid interpretation of sec. 165(e), I.R.C.1954; (2) that in 1965 Ramsay had no reasonable prospect of recovering from either its accountants or from the embezzler, but did have a reasonable prospect of recovering approximately $999,700 from the bank at which the checks had been cashed, and, therefore, that amount of Ramsay's claimed theft loss in 1965 should be disallowed; and (3) that Stevedoring, in 1965, had a reasonable prospect of recovering the full amount it claimed as a loss in 1965 ($418,730), and therefore is not entitled to any such deduction in that year.

The Tax Court, therefore, allowed Ramsay a theft loss deduction in 1965 of

---

1. Some of the checks were drawn and cashed before the enactment of the Uniform Commercial Code in Maryland, and some afterwards.

2. Who died in 1969.

3. The paper by which an action at law is begun in Maryland.

4. "Any loss arising from theft shall be treated as sustained during the taxable year in which

the taxpayer discovers the loss (see § 1.165–8, relating to theft losses). However, if in the year of discovery there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until the taxable year in which it can be ascertained with reasonable certainty whether or not such reimbursement will be received."

only \$48,849, the amount by which the total loss claimed by it on its return exceeds the sum which that court found Ramsay had a reasonable prospect of recovering from Equitable.

Taxpayers do not contest the first holding set out above, but dispute the second and third holdings on the grounds that the Tax Court applied an improper standard and erroneously excluded evidence proffered by taxpayers.

In *Boehm v. Commissioner,* 326 U.S. 287, 66 S.Ct. 120, 90 L.Ed. 78 (1945), discussing an analogous provision in the 1939 Code, the Court said (at p. 292–3, 66 S.Ct. at p. 123):

"The taxpayer claims that a subjective rather than an objective test is to be employed in determining whether corporate stock became worthless during a particular year within the meaning of § 23(e). This subjective test is said to depend upon the taxpayer's reasonable and honest belief as to worthlessness, supported by the taxpayer's overt acts and conduct in connection therewith.

"But the plain language of the statute and of the Treasury interpretations having the force of law repels the use of such a subjective factor as the controlling or sole criterion. Section 23(e) itself speaks of losses 'sustained during the taxable year.' The regulations in turn refer to losses 'actually sustained during the taxable period,' as fixed by 'identifiable events.' Such unmistakable phraseology compels the conclusions that a loss, to be deductible under § 23(e), must have been sustained *in fact* during the taxable year. And a determination of whether a loss was in fact sustained in a particular year cannot fairly be made by confining the trier of facts to an examination of the taxpayer's be-

liefs and actions. Such an issue of necessity requires a practical approach, all pertinent facts and circumstances being open to inspection and consideration regardless of their objective or subjective nature. As this Court said in *Lucas v. American Code Co.,* 280 U.S. 445, 449 [50 S.Ct. 202, 203, 74 L.Ed. 538, 67 A.L.R. 1010], 'no definite legal test is provided by the statute for the determination of the year in which the loss is to be deducted. The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal test.' "

■ The Tax Court applied that standard. We cannot agree with the concurring judge of this panel that the Tax Court overly minimized the weight to be accorded subjective factors or misconstrued *Boehm.* See 61 T.C. at 812, 813. It did not exclude from its consideration the testimony with respect to the advice given to taxpayers by their attorneys in 1965 and early 1966 and the state of mind of taxpayers' directors at that time, but it gave greater weight to what taxpayers *did,* and to its evaluation of taxpayers' prospects of recovery.[5] After considering both the objective and the subjective factors, it made its findings of fact, which we cannot say are clearly erroneous. *Parmelee Transportation Co. v. United States,* 351 F.2d 619, 173 Ct.Cl. 139 (1965), and *Rainbow Inn, Inc. v. Commissioner,* 433 F.2d 640 (3 Cir. 1970), relied on by taxpayers, do not point to a different conclusion on the facts in this case.[6]

■■ The Tax Court did not err in striking two opinions expressed by Sykes in the course of his testimony and sustaining an objection to a question calling for another opinion, not formed or communicated to taxpayers until after the

---

5. It is not necessary in this case to decide, because it would make no difference, whether taxpayers' prospects of recovery should be determined as they existed in 1965, or whether the period should be extended until taxpayers filed their 1965 tax returns. They hired Sykes in 1965 and he was unable to give his opinion

and advice until after the 1965 tax returns were filed.

6. The Tax Court carefully analyzed and applied the Maryland law, both before and after the adoption of the Uniform Commercial Code.

1965 tax returns were filed. See n. 5, above.[7] Nor did the Tax Court err in sustaining an objection to a letter written by Marbury and handed to Sykes in 1967 during settlement negotiations just before the suit was filed, presenting the bank's side of the controversy. As the Tax Court correctly stated, the standard is to be applied by foresight. 61 T.C. at 811.

This case is different from *American Casualty Co. of Reading, Pa. v. Howard*, 187 F.2d 322 (4 Cir. 1951), upon which taxpayers rely, because in that case the question was the standard of conduct of lawyers in the context of local law and local practice.

The decision of the Tax Court is

Affirmed.

WIDENER, Circuit Judge (concurring):

I concur in the result and in large part with the opinion of the court.

I wish to note particularly that we reject the Tax Court's opinion as it characterizes the standard to be applied as objective, 61 T.C. No. 85, at pp. 33–34, implying that it may not be otherwise, despite its later citation of *Boehm.* The Tax Court overly minimized the weight to be accorded subjective factors, and misconstrued *Boehm* on p. 35 of its opinion. *Boehm's* holding of moment here is no more than the "taxpayer's reasonable and honest belief as to worthlessness," a "subjective factor," is not the "controlling or sole criterion." *Boehm,* 326 U.S. at p. 292, 66 S.Ct. 123. The Tax Court's further limitation of the use of subjective evidence is not authorized by *Boehm.* Rather, *Boehm* is to the contrary. It merely rejects the "taxpayer's attitude and conduct" as the "decisive factor in every case." *Boehm,* at p. 293, 66 S.Ct. 124.

In applying a "flexible, practical" standard as required by *Boehm,* p. 293, 66 S.Ct. 124, subjective factors may be accorded great weight.

If our opinion may be read to hold that Sykes' opinions that were not communicated to his clients were not admissible because not so communicated, I disagree. Such ruling would be in the teeth of *Boehm* and establish a wholly subjective standard which *Boehm* rejects. The opinion of Sykes, admittedly a skillful attorney, as to the merits of the taxpayers' claims against the bank, was obviously relevant in any kind of objective inquiry.

Since the trial of this case was to a court sitting without a jury, the excluded testimony of Sykes was at the very least near enough to the borderline of admissibility to have been admitted and later taken proper account of in the opinion and decision of the tax court. 9 Wright and Miller, *Federal Practice and Procedure, Civil,* §§ 2412, 2414. An excerpt from the opinion in *Builders Steel Co. v. C.I.R.,* 179 F.2d 377, 379 (8th Cir. 1950), should apply here:

> "One who is capable of ruling accurately upon the admissibility of evidence is equally capable of sifting it accurately after it has been received, and, since he will base his findings upon the evidence which he regards as competent, material and convincing, he cannot be injured by the presence in the record of testimony which he does not consider competent or material."

Because Maryland law is clear, though, that the contributory negligence of the taxpayers would not necessarily bar their suit against the bank, in particular *see* Md.Ann.Code Art. 95B, §§ 3–406 and 4–406, I think any error brought to our attention in the admissibility of evidence is harmless. 28 U.S.C. § 2111; *see* F.R. C.P. 61.

---

**7.** Sykes was allowed to testify to opinions held and advice he gave to taxpayers at various stages of his work on the case.