UMIT TARAKCI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Tarakci v. Commissioner
Docket No. 14288-78.
United States Tax Court
T.C. Memo 1980-293; 1980 Tax Ct. Memo LEXIS 296; 40 T.C.M. (CCH) 858; T.C.M. (RIA) 80293; August 4, 1980, Filed Umit Tarakci, pro se. Claudia Jane Kelly, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $2,818.20 deficiency in petitioner's income tax for 1975. Due to concessions by the parties, the sole issue for decision is whether petitioner is entitled to a $6,076.80 that loss deduction in 1975. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. *297 At the time of filing his petition, petitioner Umit Tarakci was a resident of Berkeley, California. On October 27, 1974, petitioner's personal belongings were stole from a moving van. The fair market value of the stolen items as of the date of the loss was $6,076.80. On December 27, 1974, petitioner filed a claim with Global Van Lines with respect to his loss. In March 1975, petitioner received a letter from a claims representative at Fireman's Insurance Company ("Fireman's"), the insurance company for Global Van Lines. The claims representative stated that he had reviewed petitioner's claim, but that Fireman's was unable to honor it. Petitioner was advised that if he were subsequently able to document his claim by receipts or other evidence, Fireman's would reconsider his claim. In August 1975 petitioner received another letter from Fireman's which stated that it still had not received any documentation on the items that were lost as a result of the theft. In an effort to settle the claim, Fireman's offered petitioner $590.62 based on a pro rata portion of petitioner's declared value of the shipment for insurance purposes. Petitioner refused this offer by letter *298 dated August 25, 1975. Petitioner enclosed documentation showing his ownership of some of the stolen items. About October of 1975 petitioner retained an attorney to represent him with respect to his claim against Global Van Lines. Thereafter, petitioner's attorney received a letter from Fireman's that explained that Fireman's offer of settlement was low because it was based on the insurance value declared by petitioner. Petitioner's claim indicated that the value of the entire shipment was $14,500, but he only took out insurance for a $6,250 declared value. After receiving this letter, petitioner's attorney advised petitioner that nothing else could be done and that he should accept Fireman's offer. Believing, and advising petitioner, that there was no chance for a greater recovery, the attorney did nothing more on the case. Petitioner, however, did not accept the offer, nor did he or his lawyer take any further action on this matter. In 1977, Fireman's on its own initiative offered to settle the claim for $1,500. On May 18, 1977, petitioner signed a release of his claim for the $1,500. On June 27, 1977, petitioner's attorney forwarded $1,000 to petitioner which represented *299 the $1,500 settlement less $500 in attorney's fees. On his 1975 return petitioner claimed a $6,076.80 theft loss deduction. In his statutory notice of deficiency, respondent disallowed the entire amount of the claimed deduction. OPINION The issue for decision is whether petitioner is entitled to deduct, under section 165(c)(3), [1] a $6,076.80 theft loss in 1975. More specifically, the issue is whether petitioner sustained the loss in 1975. Petitioner contends that the loss was sustained in 1975 when his insurance claim was abandoned. Respondent disagrees on the basis that petitioner had a reasonable prospect for recovery in 1975. Section 165(e) provides that any loss arising from theft shll be treated as sustained during the taxable year in which the taxpayer discovers the loss. If the taxpayer has claimed reimbursement, section 1.165-1(d)(2)(i), Income Tax Regs., provides: If a casualty or other event occurs which may result in a loss *300 and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances. Whether or not such reimbursement will be received may be ascertained with reasonable certainty, for example, by a settlement of the claim, by an adjudication of the claim, or by an abandonment of the claim. When a taxpayer claims that the taxable year in which a loss is sustained is fixed by his abandonment of the claim for reimbursement, he must be able to produce objective evidence of his having abandoned the claim, such as the execution of a release. Petitioner received a settlement offer from Fireman's Insurance Company ("Fireman's") in August 1975. He refused the offer and retained an attorney to handle his claim. *301 After corresponding with Fireman's, the attorney advised petitioner that nothing else could be done to further his claim and that he should accept Fireman's offer. Petitioner, however, did not follow the recommendation or take any other action. Petitioner's attorney did no more on the case after the end of 1975. While petitioner did not release his attorney or abandon his claim, he had been responsibly advised that he had no reasonable prospect of collecting more than $590.62, and he took no steps to attempt to collect more. At the close of the year in issue, petitioner had an outstanding token offer of settlement of his claim. While petitioner still held out for a higher settlement figure, he had been advised by his lawyer that the token (less than 10%) settlement of $590.62 was the best he could do. Under the circumstances, only an incorrigible optimist would have expected significantly more. Petitioner is not required to be an incorrigible optimist to deduct his loss. Ramsay Scarlett and Co. v. Commissioner,61 T.C. 795, 811 (1974), affd. 521 F. 2d 786 (4th Cir. 1975). [2] Neither he nor his lawyer took any further action, being apparently *302 satisfied of the futility of proceeding further. Even though in 1977 he did in fact receive a settlement which restored 17% of his loss after lawyer's fees, this was not foeseeable in 1975. However, petitioner may not deduct the amount of $590.62, which was open to him to accept at any time. In light of the above, we conclude that in 1975 petitioner had no resonable prospect for recovery of more than $590.62, and sustain a theft loss in that *303 year. Accordingly, petitioner is entitled to a theft loss deduction in 1975 of $5,486.18. Of course he must restore $409.38 to income in 1977 when he ultimately collected a net of $1,000. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
2. In Ramsay Scarlett and Co.,↩ although the petitioner's lawyer was pessimistic, the lawyer did recommend retention of a collection attorney. Such an attorney was retained before the end of the year of the theft loss and commenced vigorous and ultimately successful efforts to obtain a substantial partial recovery. Mere pessimism as to outcome was held insufficient to deduct a loss as long as active collection efforts were being pursued. The present case is distinguishable because no further recovery efforts were undertaken after the end of the year. The subsequent initiative of Fireman's could not have been reasonably foreseen in 1975. As of that time it was objectively improbable that petitioner would get more than $590.62.