MORRIS A. SHENKER AND LILLIAN K. SHENKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shenker v. Commissioner
Docket No. 2989-78.
United States Tax Court
T.C. Memo 1984-280; 1984 Tax Ct. Memo LEXIS 395; 48 T.C.M. (CCH) 164; T.C.M. (RIA) 84280; May 24, 1984. John L. Boeger, for the petitioner. James Kidd, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined a deficiency in the amount of $251,919.01 in petitioners' joint 1971 Federal income tax. [1] After concessions, the sole issue for decision is whether petitioners are entitled to a deduction under section 165 [2] for a purported loss sustained as a result of subordination agreements entered by petitioner Morris A. Shenker. *396 Some of the facts have been stipulated and are found accordingly. The stipulations of facts and attached exhibits are incorporated herein by this reference. Petitioners Morris Shenker and Lillian Shenker [3] resided in Las Vegas, Nevada, when they filed their poetition in this case. They filed their 1971 joint Federal income tax return with the Internal Revenue Service Center at St. Louis, Missouri, in October 1972. Petitioner was a shareholder in White & Company, a brokerage firm having its principal place of business in St. Louis, Missouri. Petitioner maintained an account with White & Company, and in November 1970, he executed an agreement subordinating his claims with respect to the stock held for his accounts to the claims of present and future creditors of White & Company arising prior to November 1971. The purpose of the November subordination agreement was to meet the capital requirements of the New York Stock Exchange. *397 The agreement did not provide a date for the return of securities to petitioner, but only provided that petitioner would not withdraw his securities prior to the maturity date of the agreement in 1971. In April 1971, petitioner executed a subordination agreement with White & Company that was irrevocable for one year. The purpose of the April subordination agreement was to enable White & Company to meet the capital requirements of the Midwest Stock Exchange. Under the terms of the agreement, petitioner was entitled to withdraw any of the subordinated securities upon substitution of cash or securities, subject to the consent of the Midwest Stock Exchange. Petitioner executed the agreement because he did not want White & Company to become bankrupt. In 1971, White & Company attempted to use the April agreement, among others, to meet the capital requirements of the SEC.None of the subordination agreements that White & Company attempted to use met the requirements of the SEC, which notified White & Company of this fact by letter dated November 1, 1971. On January 3, 1972, the SEC sent White & Company a "Guide to the Preparation of a Satisfactory Subordination Agreement," and on *398 February 4, 1972, the SEC inquired about the status of the agreements. In the February 4 letter, the SEC reminded White & Company that the net capital rule of the Commission is violated when a broker-dealer with an unsatisfactory net capital position effects securities transactions. By letter dated February 14, 1972, White & Company attempted to supply the SEC with the information required to enable the subordination agreements to meet the net capital requirements. In March 1972, the Securities Investor Protection Corporation applied to the District Court for the Eastern District of Missouri for an order adjudicating that the customers of White & Company needed protection under the Security Investor Protection Act ("SIPA"), and on March 31, 1972, the order was entered. The SIPA afforded protection to customers of brokerage houses in two ways. First, it guaranteed claims of customers up to $50,000.00. In addition, the SIPA provided that any customer having "specifically identifiable property" at the brokerage house under liquidation was entitled to the return of such property. In June 1972, pursuant to the procedures under the SIPA, petitioner filed a claim for the return *399 of 19 different issues of stock held by White & Company for his accounts. Prior to making this claim, petitioner had made no formal written demand on White & Company for the return of these stocks. In 1971, petitioner had discussed getting the stock back with Sam Glassman ("Glassman") of White & Company. Petitioner's claim for the return of the securities in his accounts was opposed by the trustee in the liquidation of White & Company on the grounds that petitioner was not a "customer" of White & Company within the meaning of the SIPA. Petitioner pursued his claim in Bankruptcy Court, District Court and the Circuit Court of Appeals. The litigation culminated in an opinion by the Eighth Circuit Court of Appeals in December 1976, holding that petitioner, because of the subordination agreements, was not a customer of White & Company within the meaning of the SIPA, and was not entitled to the return of the securities in his accounts. Throughout the litigation, petitioner maintained that he was a customer of White & Company because the November agreement expired in November 1971, and the April agreement was invalid since it did not have attached to it the required schedule of securities. *400 Petitioner claimed a deduction on his 1971 Federal income tax return for the loss of the stock in his accounts at White & Company. Petitioner excluded $50,000.00 from the loss as the amount he expected to recover under the SIPA. In his statutory notice, respondent disallowed half of the deduction on the theory that half of the stock in Recrion Corporation held in petitioner's account at White & Company actually belonged to James Gottlieb, and recharacterized the loss as a capital loss rather than the claimed ordinary loss. In his Amendment to Answer, respondent alleged that the entire loss should be disallowed. [4]
To be deductible under section 165, a loss must be "sustained" in the taxable year in which the deduction is claimed. This requirement is amplified by the regulations, which provide in pertinent part: A loss shall be allowed as a deduction under section 165(a) only for the taxable year in which the loss is sustained. For this *401 purpose, a loss shall be treated as sustained during the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occuring in such taxable year * * *. [Section 1.165-1(d)(1), Income Tax Regs.]. Additionally, section 165 provides that to be deductible, the loss must not be compensated for by insurance or otherwise. The regulations provide that if: [T]here exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received * * *. Whether or not such reimbursement will be received may be ascertained with reasonable certainty, for example, * * * by an adjudication of the claim. [Section 1.165-1(d)(2)(i), Income Tax Regs.] [5] * * *. The filing of a suit for recovery, in the absence of countervailing evidence, establishes a reasonable prospect for recovery. *402 Estate of Scofield v. Commissioner,266 F.2d 154, 159-160 (6th Cir. 1959); Ramsay Scarlett & Co. v. Commissioner,61 T.C. 795, 811-812 (1974), affd. 521 F.2d 786 (4th Cir. 1975). The actions undertaken by the taxpayer are accorded significant weight in determining whether there is a reasonable prospect of recovery. The fact that litigation is eventually unsuccessful is not determinative of the issue, since the reasonable chance of success must be viewed prospectively, from the time the deduction was claimed. Dawn v. Commissioner,675 F.2d 1077, 1079 (9th Cir. 1982), affg. a Memorandum Opinion of this Court. Since respondent raised the total disallowance of petitioner's claimed loss deduction as a new matter, the burden of proving that petitioner was not entitled to the deduction in 1971 is upon the respondent. Rule 142(a). Respondent has met this burden, and the facts before us show that petitioner was not justified in claiming a loss in 1971. Petitioner was aware that White & Company faced financial difficulties in 1971. He executed the November 1970 and April 1971 subordination agreements because White & *403 Company was independently unable to meet the capital requirements imposed on brokerage houses, and he hoped by these means to avert the bankruptcy of White & Company. Though he discussed his concern with Glassman, an employee of White & Company, petitioner made no formal demand in 1971 for the return of the stocks in his accounts. In 1972, a trustee was appointed, and White & Company was forced into liquidation. The first demand petitioner made for the return of his stock was in 1972. White & Company was not bankrupt and remained in business until forced into liquidation in March 1972. Its repeated attempts in January and February of 1972 to qualify subordination agreements under the SEC rules illustrate its struggle to remain in business. Because White & Company remained in business throughout 1971, and since petitioner took no formal steps to withdraw the securities in his accounts that year, there is no identifiable event in 1971 upon which petitioner can premise his claimed loss. Additionally, petitioner could claim no loss while a reasonable prospect of recovery from White & Company existed. Petitioner filed his claim under the SIPA prior to filing his 1971 return. He *404 excluded $50,000.00 from the loss on his return as a potential recovery under the SIPA. Under the provisions of the SIPA, petitioner could have recovered all the stock in his accounts as specifically identifiable property. Petitioner pursued his claim to protection under the SIPA as a customer of White & Company, after its denial by the trustee, through three courts. Petitioner's own actions indicate that he "must have concluded that there was then a reasonable prospect of recovery." Schacht v. Commissioner,47 T.C. 552, 560 (1967). The ultimate denial of petitioner's status as a customer by the Eighth Circuit does not alter the fact that in 1971, petitioner prospectively had a reasonable chance of recovery. Dawn v. Commissioner,supra.
Since no identifiable event occured in 1971 upon which petitioner sustained a loss, and because petitioner had a reasonable prospect of recovery from White & Company well beyond 1971, we find that petitioner was not entitled under section 165 to claim a deduction in 1971 for the asserted loss. We have considered petitioner's other arguments and find them unpersuasive. Based on the foregoing, Decision *405 will be entered under Rule 155.
Footnotes
1. In his notice of deficiency, respondent determined a deficiency in a lesser amount and an addition to tax under sec. 6653(b). However, by his amendment to answer, respondent determined the correct amount of the deficiency to be $251,919.01. Furthermore, respondent has conceded the issue of the addition to tax, so that only the deficiency itself remains in dispute. ↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Petitioner Lillian Shenker is a party to this action only by virtue of having filed a joint return in 1971 with her husband petitioner Morris Shenker. Therefore, "petitioner" in the singular form hereinafter refers to petitioner Morris Shenker.↩
4. In the alternative, if the loss were held to occur in 1971, respondent argues that half of the loss should be disallowed. However, in light of our decision herein, there is no need for consideration of this alternative argument.↩
5. See Earle v. Commissioner,↩ a Memorandum Opinion of this Court dated December 29, 1950.