RALPH G. SACHS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sachs v. Commissioner
Docket No. 27533-83.
United States Tax Court
T.C. Memo 1985-622; 1985 Tax Ct. Memo LEXIS 11; 51 T.C.M. (CCH) 152; T.C.M. (RIA) 85622; December 23, 1985. Clyde B. Pritchard, for the petitioner. Timothy S. Murphy, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: In a statutory notice dated June 22, 1983, respondent determined deficiencies in petitioner's Federal income tax liabilities and additions to tax as follows: Additions to Tax
Year
Deficiencies
I.R.C. Section 6651(a) [1]
1978
$41,571.97
$10,329.29
1979
5,987.61
598.76
*12 Following concessions by the parties, the primary issue remaining for decision pertains to the deductibility of losses arising from the forfeiture to the State of Michigan of real property for nonpayment of real property taxes. The issue turns on whether the filing of a lawsuit by petitioner in 1978 to recover the forfeited property kept the forfeiture transaction open, thereby preventing recognition of the losses related to the forfeiture. Also at issue are additions to tax under section 6651(a) for the late filing of petitioner's 1978 and 1979 returns. FINDINGS OF FACT This case was submitted fully stipulated pursuant to Rule 122. The stipulated facts are incorporated herein by this reference and are summarized below. Petitioner, Ralph G. Sachs, was a resident of Detroit, Michigan, at the time he filed his petition herein. Petitioner filed both his 1978 and 1979 Federal income tax returns on December 8, 1980. Five parcels of real property that were *13 located in Wayne County, Michigan, and that were owned by petitioner were the subject of a tax forfeiture sale held on May 3, 1977, by the Treasurer of Wayne County, Michigan, for nonpayment of 1974 real property taxes. The State of Michigan was the only bidder on the five properties, and on May 2, 1978, the five parcels were deeded to the State of Michigan. A sixth parcel of real property that also was located in Wayne County, Michigan, and that was owned by petitioner was the subject of a tax forfeiture sale held on June 4, 1978, by the Treasurer of Wayne County, Michigan, for nonpayment of 1975 real property taxes. Again, the State of Michigan was the only bidder, and on June 4, 1979, this parcel also was deeded to the State of Michigan. On August 4, 1978, petitioner filed a complaint in the Circuit Court for the County of Wayne, Michigan (hereinafter referred to as the "Circuit Court"), in which petitioner sought to recover the six parcels of real property. [2] The complaint named as defendants the Department of Natural Resources of the State of Michigan, the Community and Economic Development Council of the City of Detroit, the City of Highland Park, and the County of Wayne, *14 Michigan. The legal grounds raised in the complaint for recovery of the six parcels were that (1) the parcels had been overvalued and a proceeding was pending in the Michigan State Tax Tribunal in an attempt to reduce the assessments; (2) petitioner had been psychologically incapacitated and therefore unable to take the appropriate action to prevent forfeiture of the parcels; and (3) petitioner's due process rights had been violated. The relief sought by petitioner was, among other things, a declaratory judgment granting petitioner absolute title to the six parcels conditioned upon his payment of the delinquent property taxes. Petitioner, on July 28, 1980, filed a Motion for Leave to Amend Complaint, together with a proposed First Amended Complaint, with the Circuit Court. The basis for the motion to amend was the discovery of new facts. The amended complaint reasserted that the legal title claimed by the State of Michigan to the six parcels *15 was without legal basis and petitioner's rights had been violated in the forfeiture proceedings. Specifically, petitioner alleged the failure of the named defendants to give petitioner timely and proper notice prior to the tax sales of the total amount of the delinquent taxes and of the forfeiture that would occur if petitioner did not redeem the parcels. Petitioner also alleged that a show cause hearing should have been held before the parcels legally could be deeded to the state. On September 26, 1980, the Circuit Court held a hearing to consider petitioner's motion for a preliminary injunction and the defendants' motion for an accelerated judgment. The Circuit Court took the motions under advisement and scheduled an evidentiary hearing for December 22, 1980, with respect to the issue of petitioner's incompetency during the years 1974 through 1977, within the meaning of Mich. Comp. Laws Ann. § 211.69 (West 1970). On November 3, 1980, petitioner (on his own initiative and without agreement between the parties to the civil suit) delivered his checks in full payment of the delinquent real property taxes to Wayne County and to the City of Detroit. Those *16 checks were returned to petitioner uncashed on November 6, 1980, by the City of Detroit and on December 3, 1980, by Wayne County. On December 8, 1980, petitioner's attorney wrote a letter to the Circuit Court indicating that petitioner had decided to abandon his claim of incompetence, and therefore no hearing with respect to that issue was necessary. Petitioner's civil suit ultimately was resolved by agreement of the parties, and a consent judgment was entered by the Circuit Court in 1981. [3] Pursuant to that judgment, all rights, title and interest the defendants had obtained in the six parcels were conveyed to petitioner. Petitioner agreed to pay $133,510.40 to the City of Detroit and $28,590.56 to Wayne County on or before March 25, 1982. The judgment provided that in the event petitioner failed to make the payments, title to the six parcels would revert to defendants. On July 10, 1981, petitioner delivered cashier's checks to the City of Detroit and to Wayne County in the respective amounts of $124,694.01 and $27,678.95, pursuant to the consent judgment. [4]
*17 Petitioner deducted losses with respect to the forefeiture of the five parcels on his 1978 Federal income tax return in the total amount of $66,589, and he deducted a loss with respect to the forfeiture of the sixth parcel on his 1979 Federal income tax return in the amount of $41,034.70. OPINION Section 165(a) [5] provides a deduction for any loss sustained during the taxable year, not compensated for by insurance or otherwise, subject to the limitations therein. Section 1.165-1(b), Income Tax Regs., provides that to be allowable as a deduction under section 165(a), a loss must be evidenced by a closed and completed transaction and the loss must be sustained during the year the loss is claimed. It is well established that losses attributable to the forfeiture of real property for nonpayment of property taxes, if otherwise allowable, constitute capital losses. Helvering v. Nebraska Bridge Supply & Lumber Co.,312 U.S. 666 (1941). Petitioner claims *18 he is entitled to deduct losses with respect to the six properties in the years in which title to the properties was deeded to the State of Michigan for nonpayment of real property taxes (namely, 1978 with respect to five of the parcels and 1979 with respect to the sixth parcel). Respondent's position is that the forfeitures were not closed transactions until the lawsuit petitioner filed with regard thereto finally was resolved in 1981, and petitioner is therefore not entitled to deduct any losses with respect to the forfeitures in 1978 or 1979. Section 1.165-1(d)(2)(i), Income Tax Regs., provides as follows: (d) Year of Deduction.--* * * (2)(1) If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is *19 a question of fact to be determined upon an examination of all facts and circumstances. Whether or not such reimbursement will be received may be ascertained with reasonable certainty, for example, by a settlement of the claim, by an adjudication of the claim, or by an abandonment of the claim. When a taxpayer claims that the taxable year in which a loss is sustained is fixed by his abandonment of the claim for reimbursement, he must be able to produce objective evidence of his having abandoned the claim, such as the execution of a release. The case law in this area generally has followed the foregoing facts and circumstances test in determining whether or not a reasonable prospect of recovery existed at the time a lawsuit was filed seeking recovery of property. See, e.g., Boehm v. Commissioner,326 U.S. 287, 292-293 (1945); Ramsey Scarlett & Co. v. Commissioner,61 T.C. 795, 807 (1974), affd. 521 F.2d 786 (4th Cir. 1975).In Estate of Scofield v. Commissioner,266 F.2d 154 (6th Cir. 1959), affg. in part and reversing and remanding in part 25 T.C. 774 (1956), the Sixth Circuit stated that-- Normally *20 where a taxpayer is in good faith willing to go to the trouble and expense of instituting suit to recoup a * * * loss, there is as a matter of fact sufficient chance of at least part recovery to justify that taxpayer in deferring the claim of a loss deduction * * * until the litigation in question is concluded. This is not to suggest that in some cases the facts and circumstances will not show such litigation to be specious, speculative, or wholly without merit and that the taxpayer hence was not reasonable in waiting to claim the loss as a deduction. However, in the absence of such circumstances, a taxpayer who feels that chance of recovery is sufficiently probable to warrant bringing a suit and prosecuting it with reasonable diligence to a conclusion is normally reasonable in waiting until the termination thereof to claim a * * * deduction. [266 F.2d at 159.] In Dawn v. Commissioner,675 F.2d 1077 (9th Cir. 1982), affg. a Memorandum Opinion of this Court, the taxpayers claimed a deduction on their 1975 Federal income tax return for a loss sustained when their landlord damaged or destroyed their personal property. The taxpayers filed a lawsuit *21 against the landlord in 1976. The Ninth Circuit noted that the taxpayers' presumptive "state of mind, as evidenced by the filing of a lawsuit, goes far toward showing the reasonableness of their prospect of recovery." 675 F.2d at 1078-1079. Under the facts and circumstances of this case, we conclude that petitioner, who has the burden of proof herein pursuant to Rule 142(a), has not established that as of the close of the taxable years 1978 and 1979 he did not have a reasonable prospect of recovering the properties with respect to which he claimed the losses in question herein. The lawsuit filed by petitioner against the Michigan state agencies alleged various grounds for recovery and at least two of the alleged grounds appear to have had a reasonable chance of establishing petitioner's right to recover the real property. Under Mich. Comp. Laws Ann. § 211.69 (West 1970), [6] Michigan courts have granted equitable relief and have set aside tax forfeitures sales where it is demonstrated that the taxpayer was unable to understand the nature and effect of the failure to pay delinquent taxes. Dayiantis v. Blackhawk, Inc.,33 Mich. App. 201, 189 N.W. 2d 808 (1971). *22 In petitioner's case, the Circuit Court acknowledged jurisdiction over the question of petitioner's competency and scheduled an evidentiary hearing with regard thereto. The fact that petitioner did not pursue that question and settled the litigation does not establish that the contention was lacking in merit. We do not have sufficient evidence before us to conclude that petitioner's claim of incompetence did not stand a reasonable prospect of success. *23 In his original and amended complaint in the Circuit Court lawsuit, petitioner alleged violations of due process. He enumerated nine specific ways in which Michigan statutory law allegedly had been violated, including the failure to be properly and timely notified of the amount of delinquent real property taxes outstanding, of the fact that a tax sale was imminent, and of his rights of redemption under Michigan law. Given the sparse record herein, [7] we have no way of ascertaining the facts relating to the alleged due process violations, and we are not able to conclude that petitioner had less than a reasonable prospect of prevailing on that issue. Petitioner ultimately was successful in the Circuit Court proceeding (i.e., he achieved his principal objective of obtaining a reconveyance of the real property with regard to which the losses were claimed), and he did so in the context of a settlement of the lawsuit he filed. *24 Finally, there remains the issue of the additions to tax determined by respondent under section 6651(a), for failure to timely file his 1978 and 1979 Federal income tax returns. Petitioner filed those returns on December 8, 1980. Petitioner bears the burden of proving that his failure to timely file was due to reasonable cause and not due to willful neglect. Kindred v. Commissioner,669 F.2d 400 (6th Cir. 1982), affg. a Memorandum Opinion of this Court; Rule 142(a). No explanation has been offered for the late filings, and accordingly, we find for respondent on this issue. Because of concessions, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue, and all rule references are to the Rules of Practice and Procedure of this Court.↩
2. The complaint was filed in an attempt to recover a total of 28 parcels of real estate, including the six involved herein. There is no explanation in the record as to whether petitioner claimed losses with respect to the other parcels.↩
3. The record herein does not indicate the exact date upon which the judgment was entered. ↩
4. The reason for the discrepancy between the amounts agreed to be paid in the consent judgment, and the amounts actually paid does not appear in the record.↩
5. Section 165(a) provides in pertinent part as follows: (a) General Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.↩
6. Mich. Comp. Laws Ann. sec. 211.69 (West 1970) Mich. Stat. Ann. sec. 7.114 (Callaghan 1984), provides-- Delinquent tax lands of incompetent persons; equitable relief; state's lien. SEC. 69. Whenever it shall be satisfactorily shown to the court that any lands included in such petition as delinquent for taxes shall belong to infants, minor heirs, idiots or insane persons, without guardians or without any other means of support, the court is, in his discretion, authorized to withhold such lands from sale, until a settlement of such person can be made, and a guardian chosen or appointed to protect the rights and interests of such person: Provided, Such withholding shall not act to prejudice the lien of the state, county or township for such taxes or the right to include the same in any subsequent petition for sale as in this act provided. In case of the sale of lands belonging to any infant, idiots, minor heirs, insane or incompetent persons, if it shall appear to any court that it is necessary to protect the rights of such incompetent person, to order any sale canceled, or deferred, it may so order, and in such case all proceedings may be stopped, sale canceled or action stayed until the proper proceedings can be had to protect the rights and property of such incompetent person or persons.↩
7. The only evidence with respect to the issue of notice and due process contained in the record is a copy of a notice from the City of Detroit dated September 4, 1979, advising petitioner that a certain parcel of real property had been acquired by the City of Detroit for nonpayment of real property taxes, and an undated "Notice to Terminate Tenancy" from the City of Detroit, advising tenants of a building on the property that they should vacate the building by November 8, 1979. It is not clear whether these notices were mailed to petitioner, posted on the property involved, or communicated in some other manner to petitioner.↩