WILLIAM H. GEISLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Geisler v. Commissioner
Docket No. 20956-83.
United States Tax Court
T.C. Memo 1988-404; 1988 Tax Ct. Memo LEXIS 432; 55 T.C.M. (CCH) 1734; T.C.M. (RIA) 88404; August 30, 1988. Richard Daly, for the petitioner. Richard H. Gannon, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined deficiencies in petitioner's income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Section 6653(a) [1]
1978
$ 50,730
$ 2,537
1979
3,115
156
1980
1,472
74
*433 The deficiencies originally set forth in the statutory notice of deficiency have been resolved by stipulation. However, in his third amended petition, petitioner asserted entitlement to a deduction for a theft loss in the 1979 tax year. Accordingly, after concessions by the parties, the issues remaining for our decision are 1) whether petitioner may deduct a theft loss in the amount of $ 515,648.82 in 1979 and 2) whether petitioner is liable for additions to tax under section 6653(a) for each of the years in issue. FINDINGS OF FACT Some of the facts were stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner was a resident of Los Angeles, California. In 1972, petitioner purchased all outstanding shares of Popular Ceramics, Inc., a corporation which owned and published the magazine "Popular Ceramics." He served as its chief executive officer until 1979 when he sold all outstanding shares of the corporation. Beginning in 1972, Richard Warner served as a life insurance underwriter for petitioner. Warner was a Chartered Life Underwriter and was qualified to place *434 life insurance with various companies. In addition to working for petitioner's corporation, Warner also served as a personal financial advisor to petitioner and assisted petitioner with his individual tax and estate planning. At one time, Warner served as a director of petitioner's corporation and also became petitioner's close friend and trusted fiduciary. Over a 6-year period between 1973 and 1979, petitioner advanced to Warner a total of $ 515,648.82 to be invested in real property, stocks and securities, trust deeds and other negotiable instruments. The income and profits from the investments were to be reinvested. Warner's consideration was to be a small management fee and reasonable commissions. In December 1979, petitioner discovered that Warner had not invested the funds but rather had used them for his own purposes. Petitioner discovered this when he attempted to visit real property that Warner claimed had been purchased for petitioner and was told by Warner that there was no such property. Warner did not account for any of the funds advanced to him by petitioner. When petitioner confronted Warner in December 1979, Warner admitted that all the money was gone. *435 Petitioner asked Warner if he had enough money to make a down payment and then begin making payments for some sort of restitution arrangement. Warner initially said he had no money, but then stated that perhaps some sort of restitution could be worked out later. On December 21, 1979, Warner gave petitioner a check in the amount of $ 10,000. In late December 1979, petitioner consulted with his attorney, Leonard Kramer, regarding the possibility of recovering the money from Warner. Petitioner gave Kramer Warner's $ 10,000 check as a retainer. Petitioner suggested that perhaps Warner had "squirreled away some of the money or deposited it in a foreign bank." Petitioner also requested Kramer's assistance in notifying the police of Warner's actions for possible criminal charges. On January 7, 1980, petitioner met with investigators from the Los Angeles CountyDistrict Attorney's Bureau of Investigation. In February 1980, petitioner's attorney hired a private investigator to ascertain the extent of Warner's assets, if any. On March 4, 1980, petitioner commenced a civil action against Warner in Los Angeles County Superior Court. In March 1981, dissatisfied with the way Kramer *436 was handling the case, petitioner hired another firm to represent him. On September 21, 1981, petitioner filed an amended complaint, adding as defendant the Massachusetts Mutual Life Insurance Company ("Mass Mutual") and Manufacturers Life Insurance Company ("Manufacturers"). In February 1983, again dissatisfied with the handling of his action against Warner, petitioner hired yet another law firm to represent him. In February 1985, just prior to the trial of the civil action, petitioner entered into a settlement agreement with Mass Mutual and Manufacturers whereby petitioner received $ 115,000 from each insurance company. On March 4, 1985, the case was tried, and on March 5, 1985, judgment was entered for petitioner in the total amount of $ 1,164,561.80 plus costs and interest from the date of entry of the decision. At some time subsequent to the judgment in the civil action, petitioner commenced an action against Warner's malpractice carrier. In March 1986, Warner filed a petition under Chapter 7 of the Bankruptcy Act. Petitioner did not deduct the amount advanced to Warner as a theft loss on his 1979 income tax return. Rather, he has raised the issue by way of his third *437 amended petition in this case. OPINION Section 165 provides a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise. Section 165(a). A loss arising from a theft is to be treated as sustained during the taxable year in which the taxpayer discovers such loss. Section 165(e). However, section 1.165-1(d)(3), Income Tax Regs., states that: If in the year of discovery there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until the taxable year in which it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Before a loss may be claimed as a deduction, it must be evidenced by a closed or completed transaction. United States v. White Dental Co.,274 U.S. 398, 401 (1927). Therefore, petitioner's entitlement to a deduction for a theft loss depends upon whether he had a claim for reimbursement that provided a reasonable prospect for recovery. This determination requires an objective inquiry into the *438 facts and circumstances surrounding the loss as of the close of the taxable year for which the deduction is claimed. Ramsay Scarlett & Co. v. Commissioner,61 T.C. 795, 811 (1974), affd. 521 F.2d 786 (4th Cir. 1975). The taxpayer is not required to be an "incorrigible optimist," and a claim for recovery with little potential for success will not require that the deduction be postponed. United States v. White Dental Co., supra,274 U.S. at 403. The facts in the record here lead us to conclude that petitioner's theft loss was not a closed or completed transaction as of the end of the 1979 tax year. Most significantly, the fact that petitioner consulted with an attorney and gave him a $ 10,000 retainer to begin work on the case in late 1979 indicates that he believed at that time there was some prospect of recovery. He continued to pursue his legal actions against Warner for over 5 years after December 1979, which is inconsistent with his arguments now that Warner had no assets and was judgment proof. We are not requiring petitioner to be overly optimistic, but we can look at petitioner's actions, even though by hindsight they were *439 overly optimistic, to determine when the extend of the loss was finally known to him. As of the end of 1979, it is apparent to us that petitioner simply did not have sufficient information to accurately determine the extent of his loss. This is borne out by the fact that he did not claim a loss on his original tax return for 1979, and, in fact, did not claim the loss until his third amended petition. Furthermore, in later years he continued to seek information about Warner's assets, the possibility of criminal prosecution and potential liability of insurance companies from which he has recovered $ 230,000 and still has one claim pending against Warner's malpractice carrier. Since petitioner had a claim for reimbursement in 1979 that provided a reasonable prospect of recovery, no loss is deductible under section 165(e) for that year. We now consider whether any part of the deficiencies originally determined in the statutory notice are due to negligence or intentional disregard of rules and regulations. The adjustments were based on respondent's disallowance of short-term capital losses and capital loss carry overs, business losses and an investment tax credit. The record is completely *440 lacking in any evidence regarding petitioner's liability under section 6653(a). Petitioner bears the burden of proof with respect to this issue, Tax Court Rule 122(a), and he has failed to meet that burden. We therefore conclude that petitioner is liable for these additions to tax. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩