T.C. Memo. 1998-58


UNITED STATES TAX COURT


RUSSELL W. AND REBECCA A. WILLEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 27751-96.                    Filed February 11, 1998.


Russell W. and Rebecca A. Willey, pro sese.

<u>Ruth M. Spadaro</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, <u>Judge</u>:  Respondent determined a $19,026 deficiency in petitioners' 1993 Federal income tax.  After concessions by petitioners, the issue for decision is whether petitioners are entitled to deduct a theft loss of $769,800.  We hold they are to the extent provided below.  Unless otherwise indicated, all

section references are to the Internal Revenue Code for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioners resided in Wilmington, Delaware, at the time they filed their petition.

In 1991, Russell Willey made short-term loans (i.e., repayment was promised within 6 months) of $200,000 to Casey Foods, Inc. (Casey), $200,000 to Nanna's Treasures, Inc. (Treasures), and $70,000 to the Electra Group, Inc. (Electra). The three companies invested the loan proceeds in the Euro-American Money Trust Fund (the trust fund). The trust fund was an independent, unrelated entity, and Mr. Willey did not have any contact or dealings with anyone associated with it. Mr. Willey's loans were never repaid.

In July of 1992, Treasures was in need of capital, so its owner, Wanda M. Dugan, offered to sell 49 percent of Treasures' stock to Mr. Willey. After reviewing Treasures' operations, financial records, and projections, Mr. Willey agreed to purchase the 49-percent stock interest for $300,000. Petitioners transferred $300,000 to Treasures but never received any Treasures stock. In 1993, Ms. Dugan filed for bankruptcy, and in 1994 petitioners filed a proof of claim in the proceeding. In

1995, Ms. Dugan received a bankruptcy discharge, and petitioners did not receive any funds.

In 1993, several trust fund representatives were indicted in the U.S. District Court for the District of New Jersey for wire fraud, money laundering, and tax evasion relating to the trust fund's activities.  In 1995, two of these individuals pled guilty and were convicted of the charged offenses.

On their 1993 joint Federal income tax returns, petitioners claimed a theft loss of $769,800 (i.e., $470,000, less $100 pursuant to section 165(h)(1), attributable to the loans to Casey, Treasures, and Electra and $300,000, less $100 pursuant to section 165(h)(1), attributable to Treasures' stock).  On October 15, 1996, respondent issued a notice of deficiency to petitioners.  Respondent determined that petitioners were not entitled to the theft loss but were entitled to a nonbusiness bad debt subject to the $3,000 annual limitation.

OPINION

Section 165(c)(3) allows a deduction for any theft loss that is not compensated by insurance or otherwise.  Whether a theft has occurred is determined under State law.  Paine v. Commissioner, 63 T.C. 736, 740 (1975), affd. without published opinion 523 F.2d 1053 (5th Cir. 1975).  The Delaware Code provides that a person commits theft when "the person takes, exercises control over or obtains property of another person

intending to deprive that person of it or appropriate it." Del. Code Ann. tit. 11, sec. 841 (1995). A person commits theft through a false promise when:

> with the intent prescribed in § 841 of this title, the person obtains property of another person by means of a representation, express or implied, that the person * * * will in the future engage in particular conduct, and * * * the person does not intend to engage in such conduct * * * [Del. Code Ann. tit. 11, sec. 844 (1995).]

Petitioners contend that they are entitled to a $469,900 theft loss because their loans to Casey, Treasures, and Electra were misappropriated by trust fund representatives. While the trust fund representatives may have committed a theft from Casey, Treasures, and Electra, the representatives did not commit a theft from petitioners. See, e.g., Perrotto v. Commissioner, T.C. Memo. 1977-99; Silverman v. Commissioner, T.C. Memo. 1975-255, affd. without published opinion 538 F.2d 320 (3d Cir. 1976). The trust fund was an independent, unrelated entity, and Mr. Willey did not have any contact or dealings with it. Indeed, Mr. Willey testified that Casey, Treasures, and Electra were not acting as agents for the trust fund. Therefore, petitioners are not entitled to deduct a theft loss attributable to their loans to Casey, Treasures, and Electra.

Petitioners contend that they are entitled to deduct, in 1993, a $299,900 theft loss attributable to Mr. Willey's purchase of Treasures  stock. Respondent, however, contends that

petitioners have not established that a theft occurred.  We conclude that Ms. Dugan committed a theft from Mr. Willey when she solicited and received payment for, but failed to deliver, Treasures stock.

Respondent further contends that even if petitioners establish that a theft occurred, they are not entitled to a deduction in 1993 because at the end of that year Ms. Dugan's bankruptcy proceeding was pending and, as a result, petitioners had a reasonable expectation of recovering some of their funds. See sec. 1.165-1(d)(3), Income Tax Regs.  We disagree.  "A reasonable prospect of recovery exists when the taxpayer has bona fide claims for recoupment from third parties or otherwise, and when there is a substantial possibility that such claims will be decided in his favor."  Ramsay Scarlett & Co. v. Commissioner, 61 T.C. 795, 811 (1974), affd. 521 F.2d 786 (4th Cir. 1975). Petitioners did not file a proof of claim until 1994, and even then their chances of recovery were remote.  Therefore, in 1993 petitioners did not have a reasonable expectation of recovery. Accordingly, we hold that petitioners are entitled to deduct a theft loss of $299,900.

To reflect the foregoing,

Decision will be entered
under Rule 155.