T.C. Summary Opinion 2017-79

UNITED STATES TAX COURT

PAUL PETER PARTYKA AND CATHERINE ELAINE PARTYKA, Petitioners
v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8573-16S.                    Filed October 25, 2017.

Paul Peter Partyka and Catherine Elaine Partyka, pro sese.

Jeremy D. Cameron, for respondent.

SUMMARY OPINION

GERBER, Judge:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code (Code) in effect for the year in issue, and all Rule references are to

(continued...)

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined an $11,551 income tax deficiency and a $2,310.20 section 6662(a) accuracy-related penalty for petitioners' 2012 tax year. The deficiency is primarily attributable to the disallowance of petitioners' theft loss deduction.[2] The issues for our consideration are whether petitioners are entitled to any part of the disallowed theft loss deduction and whether they are liable for an accuracy-related penalty.

## Background

Petitioners resided in Florida when their petition was filed. On August 28, 2011, one of petitioners, as landlord, entered into an agreement to rent their fully furnished 3,800-square-foot home in Lutz, Florida, to Ruth Games (hereinafter tenant). The tenancy was to be for a 12-month period beginning September 1, 2011. When the home was listed for rent and before the tenant and her husband moved in, petitioners contemporaneously photographed each of the rooms with the

---

[1](...continued)
the Tax Court Rules of Practice and Procedure.

[2]Two additional adjustments were made in the notice of deficiency concerning the taxability of Social Security benefits and the deductibility of qualified mortgage insurance premiums, both of which are computational and depend upon the outcome of the primary issue involving the casualty loss.

furnishings. Most of the rooms were furnished. For example, the dining room had a dining room table and six chairs and a china cabinet, and the living room contained couches and easy chairs, with pictures on the walls. The kitchen included pots, pans, and utensils.

Some of the furniture and accoutrements were to be sold to the tenant for $4,320, half of which was to be paid on September 1, 2011, and the other half on September 15, 2011. Included in the sale were chairs, a bedroom set, a cocktail table, assorted plants, vases, lamps, and other miscellaneous household items.

The tenant and her husband moved in a few days before the September 1 lease date and gave petitioners a check for the initial rent and the security deposit which "bounced". Petitioners approached the tenant, who promised she would submit another check. The tenant made no further payments for the furniture or the rent, and early in November 2011 petitioners commenced an action for legal eviction, which occurred on November 15, 2011. When petitioners gained access to the rental home, they discovered that all of the furnishings had been removed by the tenant and her husband, including furniture, window coverings, draperies, and accoutrements. In addition, petitioners discovered some damage to the home, including chipped grout and broken doors, and the house interior needed to be repainted. Petitioners took photographs of the interior and exterior of the home on

the day (November 15) they gained entry. Those photographs show the rooms photographed earlier but without the furniture and accoutrements. They also show damage or abuse to the interior and exterior of the home.

After discovering that furniture was missing, petitioners contacted the Sheriff's Office and made a formal complaint that the tenant had illegally removed petitioners' personal property from the rental home. The tenant had left a rental truck in front of the rental home which contained some of the items, including artwork, but some of the items had been "damaged and destroyed." Later that day, a deputy sheriff found the tenant and her husband, who had another rental truck and a pickup truck, both containing petitioners' household items along with some of the tenant's own items. The tenant and her husband confirmed that they had removed furniture and items from the rental home that the tenant had not agreed to purchase. The tenant agreed to return them.

Petitioners were permitted to look through the trucks in front of the rental home and to remove their items in the presence of the deputy sheriff. The process was complicated and time consuming because petitioners' and the tenant's property had been commingled. They worked at this task for some time, and the deputy sheriff decided that the process would be finished the next day after the tenant had removed her personal property from the trucks. Upon petitioners'

return the next day, the trucks and the remaining items were gone. Ultimately, the tenant did not make any further payments and did not return any other items. Petitioners did not receive the report of the Sheriff's Office until late in December 2011. No criminal charges were made or filed against the tenant or her husband.

On their 2012 joint Form 1040, U.S. Individual Income Tax Return, petitioners deducted a $29,979 casualty loss which respondent disallowed in its entirety. At trial petitioners offered a schedule showing how the $29,979 casualty loss was calculated. The schedule was based on the photographs taken before the loss, and other documentation. The schedule reflects the $4,320 of furniture that had been sold to the tenant (for which no payment was received), along with all of the items that were discovered missing from the home on the basis of the photographs for a total of $29,979. In addition, petitioners listed a crystal bowl, an oriental antique bowl, and the cost of repairs and cleanup, totaling $10,467.

The furniture and accoutrements that were sold to the tenant for $4,320 consisted of chairs, bar stools, a bedroom set, lamps, end tables, pillows, a sofa, vases, and related accessories. Petitioner Catherine Partyka, who had 20 years of experience as owner of a business named Decor & Detail, valued the items that made up the $4,320 purchase price agreed to by the tenant. She described in detail and separately valued each item in this category. Respondent conceded that

petitioners adequately substantiated the $4,320 portion of the casualty loss deduction.

The remaining $25,659 of the $29,979 casualty loss deduction is, in great part, categorized more generally. For example, petitioners valued "greenery" at $2,000 and described it as follows: "palm tree in resin pot on metal stand 300, palm tree in marble container with metal stand 800, planters, greenery throughout 2500". Similarly, petitioners valued an item labeled "back bedroom draperies, etc." at $2,700 and described it as follows: "grey gold white drapery, 2 rugs, print, accessories". Petitioners described some of the items more specifically, such as "cocktail table $800 and draperies $2,300".

The items were identified from the photographs of the household items taken before the tenant removed the items and from petitioners' memory. Petitioners arrived at values of the items on the basis of costs shown in catalogs and ads for similar items which were generated shortly before trial during 2017. Once they found a value for a similar item, petitioners applied a discount to account for the fact that the item was used.

The $10,467 of items and costs that was not included in the $29,979 casualty loss deduction consisted of two bowls valued at $2,000 and $3,000 and

other costs related to repainting the house, cleaning expenses, and other repairs to damage caused by the tenant.

All of these events occurred just before the end of 2011. Petitioners did not claim a theft loss deduction for 2011 because of the possibility that some or all of the illegally removed items would be returned. Early in 2012 petitioners completed their cataloging of the items that were removed from the rental home, and they consulted with a couple of attorneys regarding their legal options to recover the items and/or to seek damages. During 2012 petitioners were in touch with attorneys and law enforcement officers in an attempt to determine whether they would be able to recover their furnishings or seek monetary damages. Petitioners discovered that the tenant and her husband had been involved in this type of activity before and had routinely made offers to purchase furniture and then disappeared without making payment. During 2012, after petitioners were able to assess the tenant's financial situation, they determined that it would be a "waste of time" to pursue the tenant and her husband, either civilly or criminally. It was at this point in 2012 that petitioners became aware that they would not recover their furniture and other household items.

Before filing their 2012 Federal income tax return, petitioners sought advice about the proper method to report a theft loss.

## Discussion

The question we consider is whether petitioners are entitled to any portion of the $29,979 theft loss deduction claimed on their 2012 income tax return. Section 165(a) provides for the deduction of "any loss sustained during the taxable year and not compensated for by insurance or otherwise." Respondent on brief concedes "that petitioners incurred a loss by theft as defined under Florida law." Respondent contends, however, that the loss occurred in 2011 when the tenant and her husband absconded with petitioners' furniture and household items. Petitioners counter that late in 2011 there remained a reasonable potential for recovery and that they were unable to catalog and define the missing property until 2012.

As explained in Halata v. Commissioner, T.C. Memo. 2012-351, at *19-*20:

> Generally, a theft loss is treated as sustained during the taxable year in which the taxpayer discovers it. Sec. 165(a), (e). However, even after a theft loss is discovered, if a claim for reimbursement exists during the year of the loss with respect to which there is a reasonable prospect of recovery, then a theft loss is treated as "sustained" only when it can be ascertained with reasonable certainty whether such reimbursement for the loss will be obtained. Jeppsen v. Commissioner, 128 F.3d 1410, 1414 (10th Cir. 1997), aff'g T.C. Memo. 1995-342; 26 C.F.R. secs. 1.165-1(d)(2)(i), (3), 1.165-8(a)(2) (2012). * * *

In <u>Jeppsen v. Commissioner</u>, 128 F.3d 1410, 1414 (10th Cir. 1997), <u>aff'g</u> T.C.

Memo. 1995-342, the Court of Appeals further refined this concept as follows:

> Under the Internal Revenue Code, a theft loss is <u>not</u> "sustained" at the time the theft actually occurs. Rather, "any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss." I.R.C. § 165(e). Further, the Treasury Regulations provide that even after a theft loss is discovered, if a claim for reimbursement exists during the year of the loss with respect to which there is a reasonable prospect of recovery, then a theft loss is treated as "sustained" only when "it can be ascertained with reasonable certainty whether or not such reimbursement [for the loss] will be obtained." Treas. Reg. §§ 1.165-1(d)(2)(i), 1.165-1(d)(3); <u>accord</u> Treas. Reg. § 1.165- 8(a)(2). In essence, this has been interpreted to mean that the existence of a claim of reimbursement with a reasonable prospect of recovery will prevent a loss from being considered as "sustained" unless and until it is determined with reasonable certainty that such reimbursement will not be obtained. <u>See, e.g.</u> <u>Rainbow Inn, Inc. v. Commissioner</u>, 433 F.2d 640, 643-44 (3rd Cir. 1970).

This Court in <u>Ramsay Scarlett & Co. v. Commissioner</u>, 61 T.C. 795, 806-

807 (1974), <u>aff'd</u>, 521 F.2d 786 (4th Cir. 1975), explained the doctrine of tax law

underlying the need for a loss to "be ascertained with reasonable certainty", as

follows:

> It has been a constant doctrine in revenue matters that before a loss may be claimed as a deduction, it must be evidenced by a closed or completed transaction. <u>United States v. White Dental Co.</u>, 274 U.S. 398, 401 (1927); <u>Boehm v. Commissioner</u>, 326 U.S. 287, 291 (1945). Those of respondent's regulations which have posited a "closed and completed transactions" test for deduction have been in existence so long, and through so many reenactments of the statute,

that they have come to possess the "effect of law". Boehm v. Commissioner, supra at 291-292. One of the essential inquiries under the "closed transaction" concept has been whether, in the year the deduction is sought, there existed a substantial possibility that the alleged losses could be recouped by actions against responsible third parties or otherwise. Boehm v. Commissioner, supra at 294-295; Scofield's Estate v. Commissioner, 266 F. 2d 154, 158 (C.A.6, 1959), affirming and reversing and remanding in part 25 T.C. 774 (1956)

* * *

Petitioners rented out a furnished home and sold some of the furnishings in the home. The lease and sale took effect during September 2011, and within a few months and after the tenant's check bounced, petitioners began formal legal proceedings for eviction, which occurred in the presence of a deputy sheriff on November 15, 2011. When petitioners and law enforcement officers arrived, they inspected the home and found that all of the furnishings had been removed and that a rental truck was parked outside.

On November 15, 2011, petitioners made a formal complaint to the Sheriff's Office. The Sheriff's Office pursued and found the tenant and her husband, who had a second rental truck and a pickup truck, both of which were filled with furniture. After discussions, the tenant and her husband drove the second rental truck and the pickup truck to the rental home and agreed that petitioners should be able to recover their furnishings. Petitioners were allowed access in front of the rental home to the trucks which contained some of their furnishings commingled

with the tenant's.  In addition, it appeared that much of the furniture had been damaged.  Petitioners spent many hours sorting through the trucks in the presence of the deputy sheriff.  They were able to complete only part of the sorting when the deputy suggested that, because of the late hour, the tenant and her husband should leave with the trucks in order to separate and unload their personal items and return the next day with petitioners' furniture.  Although the tenant made some promises regarding the furnishings, she and her husband disappeared and did not return any additional furnishings.

Petitioners began cataloging and listing the missing items during the end of 2011 and early 2012 in order to have a basis for a criminal or civil action against the tenant and her husband.  Petitioners again consulted with law enforcement officers and were able to find out that the tenant and her husband had an extensive record of this type of activity.  Next, petitioners consulted two lawyers, who advised that it would be futile to pursue the tenant and her husband.  Accordingly, it was not until 2012 that petitioners were able to ascertain, with reasonable certainty, that they could not obtain reimbursement for the theft loss of their household furnishings.

Having found that 2012 was the year of the theft loss, we proceed to consider the amount of the loss.  Respondent conceded that petitioners have

shown the value of the $4,320 of furnishings that petitioners "sold" to the tenant but contends that petitioners have not provided "objective evidence" showing the values of the remaining items. Respondent also noted that petitioners did not present a list of the "stolen items", although requested to do so, to the Sheriff's Office during 2011.

A theft loss is limited to the lesser of: (1) the difference between the fair market value of the property before and after the loss or (2) the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of the property. See sec. 165(b); Lamphere v. Commissioner, 70 T.C. 391, 395 (1978); secs. 1.165-7(b)(1)(i) and (ii), 1.165-8(c), Income Tax Regs. Here we consider the fair market values of the stolen items.

Petitioners were able to find and offered at trial photographs of the household furnishings taken shortly before the tenant and her husband moved in during September 2011. On the basis of the photographs and coupled with their recollection, petitioners made a schedule of the items that were the basis of their $29,979 theft loss deduction. In order to show fair market values of the items, petitioners found examples of the items for sale on websites such as eBay. They also researched the cost of fabrication of items such as drapery to arrive at values.

They used the prices from their research and applied some discounts to arrive at their estimates of fair market values.

When a taxpayer establishes that he or she paid or incurred a deductible expense but fails to establish the exact amount of the deduction, the Court normally may estimate the amount allowable as a deduction. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). There must be sufficient evidence in the record, however, to permit the Court to conclude the amount of a deductible item.

Petitioners have provided testimony, photographic evidence, and some research in support of their version of the fair market values of the items in question. There are, however, some shortcomings in petitioners' methodology. The schedule in some instances is missing sufficient detail for the Court to objectively estimate a value. We list below the items in this category and for which the Court is unable to reach a factual finding of value:

### Items with insufficient information

| Category | Amount |
| --- | --- |
| Hand steamer | $40 |
| Shoe kit wooden | 45 |
| Art | 150 |
| Art pieces | 800 |
| Greenery | 2,000 |

| | |
|---|---:|
| Cocktail table | 800 |
| Accessories | 1,700 |
| Bakeware/dishes | 500 |
| Misc. | 750 |
| Total | 6,785 |

Petitioners listed living room and two other sets of draperies and reached a composite value of $10,000 ($5,000, $2,300, and $2,700). They arrived at that value by calculating the cost to make new draperies. There is no evidence in the record establishing the age and condition of the draperies, and the replacement cost would not represent the total fair market value. Under the circumstances we find the total fair market value of the draperies to be $2,000.

Petitioners also listed two beds with mattresses, box springs, linens, and covers for a composite value of $6,000. Here again, without evidence establishing the age and condition of these used bedding items, we find the total fair market value to be $1,200. The remaining items making up the $29,979 have sufficient information for the discounted values assigned by petitioners to stand. In particular, these items are $4,320 of furnishings sold to tenant; iron $99; Waterford Crystal $800; candle stands $75; secretary desk $400; and horse head statuette $300, for a total fair market value of $5,994.

In addition to the $29,979 deducted on their 2012 income tax return, petitioners listed two crystal bowls for a total of $5,000 and repairs to and painting

of the house totaling $5,467. There is insufficient evidence in the record to determine the fair market value of the crystal bowls, and they were apparently not part of the original $29,979 deduction on petitioners' return. With respect to the repairs and painting, those are not attributable to theft but instead were necessitated by normal wear and tear.

Accordingly, we hold that petitioners' 2012 theft loss is $9,194, comprising the $2,000, $1,200, and $5,994 fair market values we have found.

Respondent also determined that petitioners were liable for an accuracy-related penalty under section 6662(a). Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any underpayment of Federal income tax attributable to a taxpayer's negligence or disregard of rules or regulations or substantial understatement of income tax. The penalty was determined on the basis of a substantial understatement of income tax or negligence. An understatement of income tax is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). Although a substantial understatement existed on the basis of the determination in the notice of deficiency, until the required computation is made under Rule 155, it is not certain that the understatement is substantial.

Accordingly, we consider whether alternatively petitioners are liable for the penalty on the grounds of negligence or disregard of rules or regulations within the meaning of section 6662. Section 6662(c) defines negligence as including any failure to make a reasonable attempt to comply with the provisions of the Code and defines disregard as any careless, reckless, or intentional disregard. Disregard of rules or regulations is careless if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation. Sec. 1.6662-3(b)(2), Income Tax Regs. To the extent that we have disallowed some portions of petitioners' claimed deductions, they are not now allowable on account of lack of substantiation and/or failure to comply with rules or regulations. It was their failure to prepare and maintain adequate records and documentation in support of their claimed $29,979 theft loss deduction that resulted in our reaching a $9,194 total value of the items lost.

The accuracy-related penalty under section 6662(a) may not be imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. 438, 448 (2001). The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis,

taking into account all of the pertinent facts and circumstances. <u>See</u> sec. 1.6664-4(b)(1), Income Tax Regs.

Although petitioners sought advice about how to report a theft loss, they have not shown the specific source of the advice and whether it was reasonable for them to rely on the advice received. We accordingly hold that petitioners, on account of their negligence or disregard of rules or regulations, are liable for a section 6662(a) accuracy-related penalty with respect to the underpayment.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.